UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES HARTSELL, JR., <br><br> Plaintiff, <br><br> v. <br><br> ADAM SCHAAF, ERICK JORDAN, and LOZA, <br><br> Defendants. | CAUSE NO. 3:20-CV-505-JD-MGG |

OPINION AND ORDER

Charles Hartsell, Jr., a prisoner without a lawyer, is proceeding on one claim under 42 U.S.C. § 1983 against Pokagon Tribal Police Officers Sergeant Adam Schaaf, Officer Erick Jordan, and Officer David Loza "in their individual capacities for compensatory and punitive damages for an illegal search and seizure at the Four Winds Casino South Bend on February 23, 2019, in violation of the Fourth Amendment[.]" ECF 21 at 5. Defendants, by counsel, filed a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). They argue that as officers of the Pokagon Tribal Police, they are entitled to claim tribal sovereign immunity and therefore the court lacks jurisdiction to hear the case. However, tribal sovereignty is not implicated in this suit against them in their individual capacities, and determining whether they are state actors for purposes of § 1983 requires consideration of evidence outside of the pleadings. Therefore, the motion to dismiss is denied.

In their motion to dismiss, defendants detail the investigation that led to them detaining and searching Hartsell, a non-native person present on tribal lands. A casino patron alerted security staff that another patron, later identified as Jason Clevenger, had passed him counterfeit bills. Tribal officers reviewed surveillance footage to track Clevenger. While tracking Clevenger, they saw him leave the casino with Hartsell and give Hartsell what appeared to be a long rifle concealed under fabric. The two men drove off in Hartsell's car. Casino security continued to monitor for their return, and the Pokagon officers arranged for additional law enforcement support from the St. Joseph County Police Department, with which they have a Cross Deputization Agreement.

Clevenger and Hartsell returned to the casino. Pokagon officers handcuffed Hartsell on the casino floor then escorted him to a secure room, where he was searched and found to have a narcotic smoking pipe and methamphetamine. Further investigation led to the discovery of a rifle and pistol in Hartsell's car.

Almost none of this information is in the complaint. Defendants, however, argue that it is appropriate to consider this information on a Rule 12(b)(1) motion challenging subject matter jurisdiction. Their argument fails, though, because the question of sovereign immunity is not jurisdictional. *See Meyers v. Oneida Tribe of Indians of Wisc.*, 836 F.3d 818, 822 (7th Cir. 2016). Instead, it is a defense similar to qualified immunity and provides "immunity from trial and the attendant burdens of litigation." *Id.* (quotation marks omitted); *see Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788-89 (2014) (discussing scope of Indian tribes' sovereign immunity). Therefore, if the applicability of sovereign immunity is apparent on the face of the complaint, then the

complaint may be dismissed under Rule 12(b)(6) for failure to state a claim. *See Meyers*, 836 F.3d at 820.

Here, the defense of sovereign immunity is not applicable in the circumstances of this case. Hartsell sues the Pokagon officers in their individual capacities, and the general rule is that suits against tribal officers in their individual capacities do not implicate sovereign immunity. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1288 (2017) (holding that sovereign immunity did not apply to "individual-capacity damages actions against tribal employees for torts committed within the scope of their employment and for which the employees are indemnified by the tribe"); *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) ("Although tribal sovereign immunity extends to tribal officials when acting in their *official* capacity and within the scope of their authority, tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." (quotation marks, citations, and brackets omitted) (emphasis in original)).

Defendants argue that nonetheless, sovereign immunity should apply here because defendants were acting in their capacities as tribal police officers, exercising the tribe's inherent powers to protect and safeguard the tribal community. They assert that in detaining and searching Hartsell, they relied solely on their inherent tribal authority, not their authority derived from the Cross Deputization Agreement. Therefore, they contend, any remedy against the individual officers would ultimately interfere with the tribe's inherent powers of self-government.

"[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 137 S. Ct. at 1290 (citation omitted). A suit is against the sovereign if a judgment in plaintiff's favor will "require action by the sovereign or disturb the sovereign's property." *Id.* at 1291; *cf. Genskow v. Prevost*, 825 F. App'x 388, 391 (7th Cir. 2020) (holding the tribe was the real party in interest in § 1983 claims against individual tribal officers where "a tribal member seeks to hold individual tribal officers liable for using excessive force while removing her from a meeting of the Nation's governing body on tribal land at the Tribal Chairman's direction").

Here, a finding of liability against the officers will not affect the sovereign. Although a tribe cannot exercise criminal jurisdiction over non-native people, a tribe "retain[s] inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation *when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.*" *United States v. Cooley*, 141 S. Ct. 1638, 1643 (2021) (quoting *Montana v. United States*, 450 U.S. 544, 566 (1981) (emphasis in original)). This inherent power includes the "authority to search and detain for a reasonable time any person he or she believes may commit or has committed a crime." *Id.* As long as defendants were independently acting within their inherent tribal authority, and not relying on authority from the Cross Deputization Agreement, then they are not state actors and cannot be held liable under § 1983. *See*

4

*Pistor*, 791 F.3d at 1115 ("[A] § 1983 claim cannot be maintained against defendants who act under color of tribal rather than state law."). Thus, the tribe will not have to adjust its law enforcement practices. If, however, the officers went outside the bounds of what their inherent tribal authority permits, then their authority was derived from the Cross Deputization Agreement, which makes them state actors and subject to the constraints of the United States Constitution. A judgment against defendants would not force a change on how the Pokagon Tribe exercises its inherent authority, only on how tribal officers exercise their powers under the Cross Deputization Agreement.

Sovereign immunity is not applicable to this lawsuit, and determining whether defendants were acting under color of state law requires consideration of matters outside the complaint. The motion to dismiss (ECF 34) is DENIED.

SO ORDERED on August 16, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

5